[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 64.]

LAPUMA ET AL., APPELLANTS, *v*. COLLINWOOD CONCRETE, APPELLEE.

[Cite as *LaPuma v. Collinwood Concrete*, 1996-Ohio-305.]

*Real property—Oral contract to install brown concrete driveway—Defective concrete furnished by third party—Tort action for product liability not maintainable, when—Tort action for breach of implied warranty maintainable, when.*

Although a cause of action may concern a product, it is not a product liability claim within the purview of Ohio's product liability statutes unless it alleges damages other than economic ones, and a failure to allege other than economic damages does not destroy the claim, but rather removes it from the purview of those statutes.

(No. 94-1128—Submitted September 13, 1995—Decided March 4, 1996.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 64882.

————————————

{¶ 1} In May 1988, plaintiff-appellant Matt LaPuma negotiated an oral contract with Ralph Camillo of D & D Cement ("D&D") to replace the La Pumas' limestone driveway with a concrete driveway. LaPuma had a special request—the driveway's color should be brown. A D&D representative recommended defendant-appellee Collinwood Shale, Brick & Supply Company ("Collinwood," incorrectly named in the appellants' complaint as "Collinwood Concrete") to supply the colored concrete for the project. The LaPumas contacted Collinwood, which sent its sales manager, Mark Stedman, to the LaPumas' home with color charts. The LaPumas chose chocolate brown.

{¶ 2} Collinwood delivered and poured the concrete later in May 1988. Several months later, the appellants began to notice "little specks, maybe an eighth by an eighth, here and there." The specks were a different color from the rest of

the driveway. The LaPumas complained to Collinwood, which attempted to remedy the problem several times. Those attempts failed. The LaPumas' chocolate brown driveway was, instead, chocolate chip.

{¶ 3} On March 17, 1992, the LaPumas sued Collinwood, alleging that Collinwood was liable for negligently installing the driveway and for breaching an implied warranty of workmanlike quality. The LaPumas alleged that they had suffered "property and repair damages." The trial court granted Collinwood's motion for summary judgment, holding that the LaPumas had suffered only economic loss, and thus could not recover since they were not in privity with Collinwood. The trial court also held that an implied warranty of fitness does not apply to color.

{¶ 4} The appellate court ruled in Collinwood's favor on different grounds. That court affirmed on the ground that Ohio's product liability statutes, R.C. 2307.71 to 2307.79, preempt all common-law actions relating to defective products. The court held that since the LaPumas had suffered only "economic loss" as defined in R.C. 2307.71(B), they did not suffer any "harm" as defined by R.C. 2307.71(G). Since such harm is a prerequisite to recovering economic damages pursuant to R.C. 2307.79, the court reasoned, the LaPumas could not recover for their economic losses.

{¶ 5} This matter is now before this court upon an allowance of a discretionary appeal.

—————————

*Reminger & Reminger Co., L.P.A.*, and *Nicholas D. Satullo*, for appellants.

*Weston, Hurd, Fallon, Paisley & Howley*, *Timothy D. Johnson* and *Gregory E. O'Brien* for appellee.

—————————

**PFEIFER, J**.

{¶ 6} We find that since appellants' claim is not a product liability claim pursuant to statute, R.C. 2307.71 to 2307.80 do not preempt their cause of action. Instead, they have a possible claim for breach of an implied warranty against Collinwood.

I

{¶ 7} Ohio's product liability statutes, by their plain language, neither cover nor abolish claims for purely economic loss caused by defective products. The appellate court correctly noted that the damages the LaPumas sought in their complaint were economic. They were suing for the replacement cost of the driveway, and "economic loss" is defined in 2307.71(B) as follows:

"'Economic loss' means direct, incidental, or consequential pecuniary loss, including, but not limited to, damage to the product in question, and nonphysical damage to property other than that product. * * *"

{¶ 8} A cause of action for damage to the product itself, *i.e.*, a cause of action alleging only economic damages, is not included in the statutory definition of a "product liability claim" contained in R.C. 2307.71(M):

"'Product liability claim' means a claim that is asserted in a civil action and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property *other than the product in question * * * *.*" (Emphasis added.)

{¶ 9} Since the LaPumas' claim was based only on damage to the driveway itself, their claim is not a product liability claim controlled by the R.C. 2307.71 to 2307.80. Ohio's statutory scheme recognizes that claims like the LaPumas' may arise, and R.C. 2307.72(C) acknowledges that plaintiffs with such claims may have a common-law remedy:

"Any recovery of compensatory damages for economic loss based on a claim that is asserted in a civil action, other than a product liability claim, is not

subject to sections 2307.71 to 2307.79 of the Revised Code, but may occur under the common law of this state or other applicable sections of the Revised Code."

{¶ 10} Thus, R.C. 2307.72 makes it clear that although a cause of action may concern a product, it is not a product liability claim within the purview of Ohio's product liability statutes unless it alleges damages other than economic ones, and that a failure to allege other than economic damages does not destroy the claim, but rather removes it from the purview of those statutes.

II

{¶ 11} The LaPumas do have a common-law claim against Collinwood. In *Iacono v. Anderson Concrete Corp.* (1975), 42 Ohio St.2d 88, 71 O.O.2d 66, 326 N.E.2d 267, this court allowed a plaintiff to recover against a concrete supplier for damage to the plaintiff's new driveway. In *Iacono*, small, round holes formed in the plaintiff's driveway soon after a contractor completed installing it, and the plaintiff brought suit against the contractor and the supplier for the damage to the driveway itself. Despite the lack of privity between the plaintiff and the supplier, this court held that the plaintiff could maintain a tort action against the supplier based upon a theory of breach of implied warranty. While the imperfections to the driveway in the present case concern its color, we do not find that that significantly distinguishes this case from *Iacono*. Therefore, the LaPumas may pursue a claim of breach of implied warranty against Collinwood.

{¶ 12} We therefore reverse the judgment of the court of appeals, vacate the judgment of the trial court, and remand the cause to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., DOUGLAS and RESNICK, JJ., concur.

WRIGHT and COOK, JJ., concur separately.

F.E. SWEENEY, J., concurs in judgment only.

---

**COOK, J., concurring**.

{¶ 13} While I agree with the majority's conclusion that the appellant's claim for breach of implied warranty is not preempted by R.C. 2307.71 through 2307.80, I also believe that the language employed by the majority implies an exclusion that is overly broad. Accordingly, I write separately.

{¶ 14} In the syllabus of today's opinion, this court holds that any cause of action alleging purely economic damages is removed from the purview of R.C. 2307.71 through 2307.80. In so holding, the majority relies upon R.C. 2307.72(C), which states:

"Any recovery of compensatory damages for economic loss based on a claim that is asserted in a civil action, *other than a product liability claim*, is not subject to sections 2307.71 to 2307.80 of the Revised Code, but may occur under the common law of this state or other applicable sections of the Revised Code." (Emphasis added.)

{¶ 15} The phrase "product liability claim" is defined in R.C. 2307.71(M) as follows:

"'Product liability claim' means a claim that is asserted in a civil action and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property *other than the product in question*[.]" (Emphasis added.)

{¶ 16} I interpret R.C. 2307.72(C) to exclude only a very narrow class of cases from the purview of R.C. 2307.71 through 2307.80, that is, cases where the damages sought relate solely to the product itself. Any other cause of action fitting within the definition of a "product liability claim" is preempted by the operation of R.C. 2307.71 through 2307.80.

{¶ 17} "Economic loss" as defined in R.C. 2307.71(B) encompasses "direct, incidental, or consequential pecuniary loss, including, *but not limited to*,

damage to the product in question, *and nonphysical damage to property other than that product*." (Emphasis added.)   Clearly then, economic loss can flow from damages other than those caused to the defective product itself.  In such a case, the claimant may recover economic losses only after establishing an entitlement to recover compensatory damages for <u>harm</u> from a manufacturer or supplier. R.C. 2307.79.  "Harm" as defined in R.C. 2307.71(G) means "death, physical injury to person, serious emotional distress, or physical damage to property other than the product in question."

**{¶ 18}** In light of the foregoing,  R.C. 2307.71 through 2307.80 preempts all similar theories of recovery existing at common law or arising under another section of the Revised Code in those cases wherein a claimant alleges purely economic losses other than those arising from damage to the product in question. Because today's syllabus suggests that such cases are removed from the operation of R.C. 2307.71 through 2307.80, I cannot join in the majority's opinion.

WRIGHT, J., concurs in the foregoing concurring opinion.

_____